IN THE UNITED STATES DISRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CHRISTINA L. COWIE,

                Plaintiff,         Case No. 6:16-cv-01965-YY

      v.                                    OPINION AND ORDER

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

YOU, Magistrate Judge:

Plaintiff Cristina A. Cowie ("Cowie") brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

## ADMINISTRATIVE HISTORY

On August 19, 2012, Cowie applied for DIB, alleging disability as of January 15, 2011. Tr. 156-57. Her applications were denied initially and upon reconsideration. Tr. 91-94, 98-100.

On January 27, 2015, a hearing was held before an Administrative Law Judge ("ALJ"), wherein Cowie was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 28-62. On April 16, 2015, the ALJ issued a decision finding Cowie not disabled within the meaning of the Act. Tr. 9-23. After the Appeals Council denied her request for review, Cowie filed a complaint in this court. Tr. 1-4.

## BACKGROUND

Born on August 16, 1974, Cowie was 36 years old on the alleged onset date of disability and 40 years old at the time of the hearing. Tr. 33, 156. She obtained a GED in 1994 and worked previously as a deli worker, food prep worker, pizza cook, and manager. Tr. 54-56, 168. Cowie alleges disability due to back pain, leg weakness, peripheral neuropathy, seizures, incontinence, and chronic obstructive pulmonary disease ("COPD"). Tr. 40-41, 167, 203, 211.

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (citation omitted); 20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i) & (b).

At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or combination of impairments that meets the 12-

month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii) & (c). Absent a severe impairment or combination of impairments, the claimant is not disabled. *Id.*

At step three, the ALJ determines whether the impairment or combination of impairments meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments). 20 C.F.R. § 404.1520(a)(4)(iii) & (d). If the impairment or combination of impairments is determined to meet or equal any listed impairment, the claimant is disabled. *Id.*

If adjudication proceeds beyond step three, the ALJ evaluates medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by her impairments. 20 C.F.R. § 404.1520(e); SSR 96-8p, *available at* 1996 WL 374184.

At step four, the ALJ uses the RFC to determine whether the claimant can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv) & (e). If the claimant cannot perform past relevant work, then at step five the ALJ determines whether the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v) & (g).

The claimant bears the initial burden of establishing disability. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (citation omitted). If the process reaches step five, however, the burden shifts to the Commissioner to show that jobs exist in the national or local economy within the claimant's RFC. *Id.* If the Commissioner meets this burden, then the claimant is not disabled; otherwise, the claimant is disabled and entitled to benefits. 20 C.F.R. § 404.1520(a)(4)(v) & (g).

///

## ALJ'S FINDINGS

At step one, the ALJ found Cowie last met the insured status of the Act on December 31, 2014, and had not engaged in substantial gainful activity since the alleged onset date, January 15, 2011. Tr. 11.

At step two, the ALJ determined the following impairments were medically determinable and severe: degenerative disc disease of the lumbar spine, COPD, and peripheral neuropathy. *Id.*

At step three, the ALJ found that Cowie's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 14.

Because Cowie did not establish presumptive disability at step three, the ALJ continued the sequential evaluation to determine how Cowie's impairments affected her ability to work. The ALJ resolved that Cowie had the RFC to perform medium work, except that she "was capable of frequent climbing of ladders, ropes or scaffolds, and frequent stooping," and "needed to avoid concentrated exposure to extreme cold, excessive vibration, respiratory irritants such as fumes, odors, dusts, gases, and poorly ventilated areas, the operational control of moving machinery, unprotected heights and hazardous machinery." Tr. 14-15.

At step four, the ALJ found Cowie could not perform any past relevant work. Tr. 21.

At step five, the ALJ determined, based on the VE's testimony, that there were a significant number of jobs in the national and local economy that Cowie could perform despite her impairments, such as hand packager, coffee maker, office helper, and mailroom clerk. Tr. 21-22. Accordingly, the ALJ concluded Cowie was not disabled under the Act from January 15, 2011, through December 31, 2014, and rejected her DIB claim. Tr. 22.

///

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence means more than a mere scintilla, but less than a preponderance, *i.e.* such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and internal quotations omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted). The entire record must be considered as a whole and the court "may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins*, 466 F.3d at 882 (citation and internal quotations omitted). Conversely, the court may not substitute its judgment for that of the Commissioner. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1205 (9th Cir. 2008) (citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation and internal quotations omitted).

## DISCUSSION

Cowie argues the ALJ erred by rejecting: (1) her subjective symptom testimony; (2) the third-party testimony of her husband, Joseph Hauptman; and (3) the medical opinion of nurse practitioner Mason Harrison.

///

///

I.      **Subjective Symptom Testimony**

Cowie asserts the ALJ wrongfully discredited her subjective symptom testimony concerning the severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, Cowie identified her progressively worsening back pain as her largest barrier to employment. Tr. 34-35. She characterized her average pain level as "[a]bout a seven" out of ten (with "ten meaning that you should be hospitalized"), and described her symptoms as tingling pain and cramps that radiate into her legs, arms, and neck. Tr. 35-36. As a result, Cowie stated her arms and legs "are very weak," such that she is unable to lift or carry more than ten pounds, and could "not squat down without help getting back up." Tr. 37, 40, 47. To ease her back and leg pain, Cowie explained that she takes ibuprofen and changes positions "constantly"; she also endorsed the need to lie down for approximately 30 minutes "four or five times a day."

Tr. 35-39. Later in the hearing, when asked to "remind" counsel how often she needed to lie down to ease her symptoms, Cowie responded "seven or eight times a day." Tr. 53.

Cowie additionally testified to urinary incontinence, problems grasping objects, and seizures, which cause a stutter, achiness, and fatigue. Tr. 40-43, 46. Regarding mental health issues, Cowie initially testified to depression, suicidal ideation, and poor motivation; upon the ALJ's follow-up inquiry, she acknowledged that she was not participating in "any talk therapy or counseling" because her psychological medications "pretty much manage[d] the symptoms to [her] satisfaction." Tr. 45-46, 49. Cowie commented that, "almost a year ago," she reduced her chronic alcohol consumption from numerous drinks per day down to two. Tr. 43. As for daily activities, Cowie remarked she does no cleaning and limited cooking; the remainder of the day she "pretty much play[s] on the computer" or watches television. Tr. 44, 50-51, 53.

After summarizing her hearing testimony, the ALJ determined that Cowie's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her statements regarding the extent of these symptoms were not fully credible[1] due to her activities of daily living and the observations of the Cooperative Disability Investigation Unit ("CDIU") officer, as well as the lack of corroborating medical evidence relating to her physical symptoms.[2] Tr. 15-19.

---

[1] The court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16-39, *available at* 2016 WL 1119029 (superseding SSR 96-7p). According to the Commissioner, "SSR 16-3p has an effective date of March 28, 2016 [and is therefore] inapplicable to the present matter." Def.'s Resp. Br. 5. n.2 (citation omitted). In any event, the ALJ's findings in regard to this issue fail to pass muster irrespective of which standard governs.

[2] Cowie does not challenge the ALJ's treatment of her psychological impairments, either at step two or in formulating the RFC. *See generally* Pl.'s Opening Br.; *see also*

Page 7 - OPINION & ORDER

The ALJ's reasons are legally sufficient and supported by substantial evidence, but only as to the period that predates 2014. Evidence from 2011 through 2013 evinces of level of daily functioning far in excess of Cowie's subjective symptoms statements. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[e]ven where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment") (citations omitted).

For instance, in applying for benefits in 2012, and in subsequent updates to the Social Security Administration, Cowie claimed to be experiencing intense pain in her legs, back, and hands, as well as frequent seizures, which prevented her from walking, squatting, completing housework, cooking, and performing self-care independently. *See, e.g.*, Tr. 167, 203, 206, 211, 215, 325. Yet Cowie's Adult Function Report (dated February 2013), Hauptman's Third-Party Adult Function Report (dated February 2013), and the CDIU Report (dated March 2013) demonstrate that Cowie was cleaning for several hours per day, going on "long hikes in the countryside," grocery shopping, camping and fishing monthly in the summertime, socializing, and gambling "at the Seven Feathers Casino in Canyonville." Tr. 178, 180, 187, 199. In addition, the CDIU officer observed Cowie to: stand for twenty minutes, with good posture and without any pain behavior or excessive movement; sit comfortably for twenty-five minutes; and "bend over [without] exhibiting any sign of discomfort." Tr. 197-98, 200. Likewise, medical records from 2011 through 2013 show Cowie was wrestling with her adult nephews, looking for work, hiking, helping her in-laws move, and addicted to alcohol. Tr. 236, 243, 290, 293, 335, 491. Cowie reported "chronic alcoholism," drinking up to "24 beers daily," with "definite

---

*v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (courts "review only issues which are argued specifically and distinctly in a party's opening brief").

withdrawal" symptoms if she does not drink. Tr. 199, 223, 226, 233, 240-41, 244, 278-81, 290, 303, 325, 335, 403-05, 435, 443, 452-54, 495.

However, the record reflects that Cowie dramatically reduced her alcohol consumption approximately twelve months prior to the December 2014 date last insured. *Compare* Tr. 403-05 (Cowie reporting to Dr. Steinbrenner in March 2013 historically dinking "up to 24 to 48 beers a day" and presently drinking "6+ beers a day"), *with* Tr. 479 (Cowie remarking to Harrison in January 2014 during their first appointment that she was "down to an honest 2 beers a day, which is a significant decrease for her"). Although some of Cowie's allegedly disabling conditions improved in 2014, the medical evidence suggests that others worsened. *See* Tr. 479-90, 505-27 (Cowie making no complaints of seizures or breathing issues to medical providers post-2013, but nonetheless reporting "more severe and constant" back pain).

The ALJ failed to distinguish between these two periods and instead exclusively relied on inconsistencies in the record that coincided with Cowie's period of significant alcohol abuse to discredit her hearing testimony. *See* Tr. 18, 20 (ALJ relying on non-medical evidence[3] from no later than August 2013). This is problematic given the remote alleged onset date and the fact that there is no dispute Cowie suffers from chronic, degenerative conditions. *See* Tr. 16-17 (ALJ accepting objective medical evidence from within the relevant time period of Cowie's "moderately severe and chronic generalized peripheral neuropathy" and "advanced degenerative disc disease at L5-S1"); *see also Dahl v. Comm'r of Soc. Sec.*, 2015 WL 5772060, *5 (D. Or. Sept. 30, 2015) (even mild degenerative disc disease can be disabling) (collecting cases).

---

[3] Even assuming the medical evidence from 2014 belied Cowie's self-reports, an ALJ cannot reject a claimant's subjective symptom testimony solely on this basis. *Lingenfelter*, 504 F.3d at 1040 (citations omitted).

Page 9 - OPINION & ORDER

As such, a significant question exists concerning Cowie's work-related abilities during the twelve month period that preceded the December 2014 date last insured. The record is silent concerning Cowie's daily activities during this period and her hearing testimony (obtained shortly after the date last insured lapsed) largely pertains to her current functioning. *See, e.g.*, Tr. 34-53. Further, there is no medical evidence from an acceptable medical source concerning Cowie's physical functioning in 2014. *See* Tr. 64-76, 78-90 (state agency consulting source opinions from 2013), 403-05 (physical capacity evaluation from Roger Steinbrenner, M.D., dated March 2013; Dr. Steinbrenner did not identify any functional limitations and instead opined that Cowie's "[c]hronic alcoholism may be her major limiting factor"); *see also* Tr. 519-24 (Harrison's medical opinion, dated January 2015, reflecting treatment over the past year).

Therefore, the record is insufficient to support the ALJ's decision as to this period. *See Robbins*, 466 F.3d at 884 n.2 (reversing the ALJ's credibility finding where he neglected to account for or otherwise "investigate the possible disparity" between the claimant's inconsistent reports of alcohol use); *see also Lee v. Colvin*, 2016 WL 3647974, *2-5 (D. Or. July 7, 2016) (reversing the ALJ's decision where there the record demonstrated that the claimant's back condition was not disabling as of the alleged onset date but was nonetheless "gradually deteriorating and may have become more extreme prior to the established disability date"). Accordingly, the ALJ's credibility finding is reversed as it relates to 2014.

## II.     Third-Party Testimony

Cowie also contends the ALJ neglected to provide a legally sufficient reason, supported by substantial evidence, to reject the lay witness statements of Hauptman. Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina*, 674 F.3d at 1114 (citation omitted). The

Page 10 - OPINION & ORDER

ALJ must provide "reasons germane to each witness" in order to reject such testimony. *Id.* (citation and internal quotation omitted).

As noted above, Hauptman completed a Third-Party Adult Function Report in February 2013. Tr. 176-83. He reported "all of [Cowie's] daily and personal activities" were limited. Tr. 176. Hauptman identified problems with personal care, standing, walking, lifting, squatting, concentration, and pain. Tr. 177-78, 181. He nonetheless indicated Cowie could perform household chores (such as cooking and cleaning) in moderation, walk the dog daily, shop for groceries, socialize over the "phone with longtime girlfriends," follow written and spoken instructions well, and camp, fish, and go on short hikes in the summertime. Tr. 177-82.

The ALJ afforded Hauptman's third-party testimony "partial weight." Tr. 20. Specifically, the ALJ "considered [Hauptman's] report and finds that it supports that [Cowie] has some limitations." *Id.* Regardless, the ALJ rejected Hauptman's lay statements to the extent they were contravened by Cowie's wide range of daily activities and the objective medical evidence. *Id.* Inconsistency with the record is a germane reason to discount third-party testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Lay witness testimony may also be disregarded on the same basis as the claimant's discredited subjective reports. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Substantial evidence supports the ALJ's determination concerning this issue. As addressed in Section I, the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's subjective symptom testimony concerning her functioning prior to 2014 and these reasons are equally applicable to Hauptman's 2013 lay statements. *See Molina*, 674 F.3d at 1114-22 (affirming the ALJ's decision "where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims")

(citation and internal quotations omitted). The ALJ's decision is upheld as to the third-party testimony.

### III. Lay Medical Opinion Evidence

Cowie next argues the ALJ improperly rejected the medical opinion of nurse practitioner Harrison who treated her in 2014. While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources" can be used to determine the severity of an impairment and how it affects the claimant's ability to work. 20 C.F.R. § 404.1527(f). "Other sources" include, but are not limited to, nurse practitioners. SSR 06-03p, *available at* 2006 WL 2329939. To disregard the opinion of an other, or lay medical, source, the ALJ must provide a reason that is germane to that witness and adequately supported by the record. 20 C.F.R. § 404.1527(f); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (citation omitted).

Cowie initiated care with Harrison in January 2014 for emotional lability and poor sleep. Tr. 479-81, 519. Prior to the date last insured, Cowie sought treatment from Harrison three additional times (in March, October, and December 2014) for, in relevant part, chronic and worsening lower back pain, bilateral leg weakness, peripheral neuropathy, and bowel urgency that recently progressed to incontinence. Tr. 482-90, 516-18. During each office visit, Harrison documented Cowie's self-reported symptoms and performed physical examinations, which were unremarkable. Tr. 479-90, 516-18.

In January 2015, Harrison completed a Physical Medical Source Statement.[4] Tr. 519-22. He listed Cowie's diagnoses as peripheral neuropathy, lumbar radiculopathy and spondylosis,

---

[4] That same month, Harrison wrote a letter on behalf of Cowie stating "due to medical circumstances she has been and is unable to work." Tr. 524. However, because Harrison's letter

Page 12 - OPINION & ORDER

and limb weakness. Tr. 519. Regarding functional limitations, Harrison opined Cowie: could sit/stand for 30 minutes at one time and two hours in an eight hour workday; needed job that permitted shifting positions at will and one or two unscheduled breaks per day; could never lift 50 pounds and occasionally lift less than ten pounds; and could rarely twist, stoop, crouch/squat, and climb ladders or stairs. Tr. 520-21. He did not indicate the presence of any limitations due to psychological conditions or with attention, concentration, attendance, reaching, handling, and fingering. Tr. 519-22.

The ALJ assigned "little weight" to Harrison's opinion because it "lack[ed] sufficient corroborating medical evidence." Tr. 20. The ALJ also rejected Harrison's opinion because it was inconsistent with Cowie's "range of activities" and appeared to "to rely largely on [Cowie's] self-reported symptoms/limitations." *Id.*

As discussed in Section I, the ALJ erred in evaluating Cowie's subjective symptom testimony pertaining to the period in 2014 when she ceased drinking heavily. Thus, it was unreasonable for the ALJ to rely on the credibility of Cowie's self-reports in affording less weight to Harrison's opinion.

Additionally, the medical evidence that the ALJ relied upon is not wholly inconsistent with the functional limitations identified by Harrison. Both the ALJ's decision and Harrison's Physical Medical Source Statement refer to objective medical evidence of severe degenerative disc disease in the lumbar spine and "moderately severe and chronic" peripheral neuropathy, and either condition could have caused or contributed to many of Cowie's purported limitations. Tr. 16-17, 20, 280-81, 437, 506, 509-11, 513, 519. Also, Harrison did not opine as to any reaching, handling, or fingering restrictions and denied the need for an assistive device. Tr. 521. In sum,

did not identify the medical basis of his opinion or delineate any concrete work-related limitations, it is not probative as to Cowie's functional abilities.

the fact Dr. Steinbrenner assessed no functional limitations or that prior exams denoted full motor strength in the lower extremities, the ability to ambulate without assistive devices, and good grip strength does not necessarily undermine Harrison's conclusions. For these reasons, the ALJ committed harmful legal error in evaluating Harrison's opinion, such that reversal is warranted. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (only mistakes that are "non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

## IV. Remand

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The court nevertheless may not award benefits punitively. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ erred by failing to provide legally sufficient reasons, supported by substantial evidence, for disregarding Harrison's medical opinion and Cowie's subjective symptom testimony. The record before this court is nonetheless ambiguous concerning the extent of Cowie's allegedly disabling physical impairments after she ceased drinking. On the one hand, Cowie endorsed neuropathy, incontinence, severe and worsening

Page 14 - OPINION & ORDER

back pain, and leg weakness during 2014. Tr. 479-90, 505-33. The medical evidence similarly shows severe degenerative disk disease in the lumbar spine and "moderately severe and chronic" peripheral neuropathy. Tr. 437, 506, 280-81, 509-11.

Conversely, Cowie gave inconsistent or incomplete testimony at the 2015 hearing relating to her need to lie down, limitations relating to sitting and fingering, and mental health symptoms. Tr. 34-53. She also endorsed limitations due to seizures and COPD that are not born out by the medical record from the time period in question. *Compare id.*, *with* Tr. 479-90, 505-33. This is significant given that Harrison's opinion appears to be based, at least in part, on Cowie's self-reports, and there in no medical or other evidence in the record post-2013 concerning Cowie's physical functional abilities. Further, Harrison's Physical Medical Source Statement did not acknowledge Cowie's history of significant alcohol abuse or otherwise account for what impact, if any, it might have on her functional abilities, despite the fact that his chart notes list "alcohol abuse" as part of Cowie's medical history and reveal that her continued, albeit limited, alcohol consumption "may be the cause of the chronic peripheral neuropathy." Tr. 485; *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999) (ALJ need not accept a medical opinion that fails to take into account a claimant's drug or alcohol use).

Finally, while it is doubtful (given the medical evidence from 2014 of neuropathy and increased back pain) that Cowie would be able to perform work consistent with the ALJ's RFC, the VE testified that a hypothetical individual capable of a far more limited range of light work would still be competitively employable.[5] Tr. 59-60.

---

[5] Presuming this testimony accurately captured all the limitations reflected in Cowie's and Harrison's statements, the court cannot find the ALJ's errors harmless because the VE did not

Page 15 - OPINION & ORDER

In light of these ambiguities, further proceedings are required to resolve this case. Upon remand, the ALJ must consult a medical expert to review the entire record and opine as to Cowie's functional abilities during 2014 and, if necessary, reformulate Cowie's RFC and obtain additional VE testimony.

## **CONCLUSION**

For the reasons stated above, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 29th day of November 2017.

                                            /s/ Youlee Yim You

                                            Youlee Yim You
                                            United States Magistrate Jude

---

identify any specific representative occupations or their incidence in regard to this hypothetical. Tr. 59-60.